# In the United States Court of Federal Claims

No. 09-793 T
(Filed: May 6, 2011)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
                                     \*

**PANASONIC COMMUNICATIONS**    \*
**CORPORATION OF AMERICA,**      \*
                                     \*
              **Plaintiff,**        \*
                                     \*
      **v.**                         \*
                                     \*
**THE UNITED STATES,**           \*
                                     \*
             **Defendant.**     \*
                                     \*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## ORDER

This case is a tax refund action wherein Panasonic complains that the Internal Revenue Service ("IRS") improperly imposed an excise tax against it due to the presence of ozone-depleting chemicals (ODCs) allegedly used in the manufacture and production of its imported telephone products.  In September 2010, the Court set out a schedule for fact and expert discovery in preparation for a mini-trial on the issue of the validity of the ODC testing.

Before the Court is Plaintiff's second motion to compel discovery responses.  At issue are Plaintiff's Request for Production Number 32; Request for Production Number 34; documents shared with Dr. Bob Wright of Pacific Northwest National Laboratory ("PNNL") as to which the United States asserts the attorney-client privilege; and Request for Production Number 52, as to which the United States asserts the deliberative process privilege.

Document Request Number 32

The United States objects to Request Number 32 on the basis that it is overbroad and burdensome, seeks documents neither relevant nor calculated to lead to the discovery of admissible evidence, is unclear, calls for the production of documents or information that would reveal the manner in which taxpayers are selected for audit or under what circumstances the IRS may subject the products of a taxpayer to testing for ozone-depleting chemicals, and conflicts with the confidentiality provisions of 26 U.S.C. § 6103.  Resp. at 5-6.

The Court has addressed the Government's objections based on the application of § 6103 in its order of April 20, 2011.  Defendant has separately moved the Court for a protective order protecting the confidentiality of information that would reveal under what circumstances the IRS

may subject the products of a taxpayer to scientific testing for ozone-depleting chemicals.  The Court's decision on that motion will be issued in a separate order.

Plaintiff's Request Number 32 states:

>Produce all IRS documents related to guidance for revenue agents and/or other IRS employees regarding ODC excise taxes, including without limitation internal guidance regarding assessment of excise taxes, documents related to testing for presence of ODCs, audit technique guides, bulletins, notices, and procedures.  (Note this request should include, for example but without limitation, documents related to the IRS's "Ozone Depleting Chemicals (ODC) Excise Tax Audit Techniques Guide" and related documents including notes, e-mails, memoranda and other documents in the possession of Jody Angelo, ODC Program Analyst and/or her associates, predecessors, or successors.)

Defendant argues that the phraseology of the request, "documents related to . . . guidance . . . regarding ODC excise taxes," renders the request overly broad and therefore burdensome.  "Guidance" is not defined and the omnibus phrases "related to" and "regarding" do not modify a "sufficiently specific type of information, document, or event."  *See Brown Bear v. Cuna Mut. Group*, 266 F.R.D. 310, 320 (D.S.D. 2009).  The Government points out that the request is not limited to any particular category of documents, to guidance to or from any particular individual or individuals, to any particular aspect of ODC excise taxes, or limited in time or temporal scope.

In addition, it argues that, because tax refund suits are *de novo* proceedings "in which the conclusions and reasoning of IRS agents during administrative proceedings are not relevant," any guidance given to revenue agents is irrelevant to this specific *de novo* refund action.  Def.'s Resp. at 5.  Furthermore, to the extent Plaintiff's request for such guidance documents is based on its interest in examining the strengths and limitations of the scientific testing for ODCs, the terms of the request are unclear.

Plaintiff's request, however, does identify at least one specific document, the Audit Techniques Guide, and generically describes other such documents it seeks, such as bulletins, notices, and procedures, as examples of the objects of its discovery request.  It also identifies a specific individual by name and title, as well as directing its request to her associates, predecessors, and successors, although it affirms that "it is the substance of the guidance that is relevant," rather  than the identity of the individual giving or receiving the guidance.  Reply at 4.  Furthermore, in its Reply, Plaintiff proposes a re-write of its document request:

>Produce all IRS guidance for or to IRS employees regarding testing for ODCs in commercial products and/or application of the ODC excise tax regulation, 26 C.F.R. § 52.4682-3, to specific types of products (electronic and non-electronic products or components).  Responsive documents would include, for example but without limitation, audit technique guides, bulletins, notices,

procedures, and training materials.  Note this should include, for
example but without limitation, documents related to the IRS's
"Ozone Depleting Chemicals (ODC) Excise Tax Audit Techniques
Guide" and the "IRS Revised Audit Technique Guide on Ozone
Depleting Chemicals Excise Tax," as well as notes, e-mails,
memoranda, and other documents in the possession of current and
former ODC Program Analysts, including Jody Angelo and/or her
associates, predecessors, or successors.  For purposes of this
request, the relevant timeframe is 1989 to the present.

*Id*. at 5.

In addition, as the Court noted with respect to Plaintiff's first motion to compel, the
object of the parties' discovery at this stage of the litigation is to prepare for trial on the limited
topic of the validity of the scientific testing employed by the IRS to ascertain the presence of
ODCs in Plaintiff's products.  Plaintiff's request is not directed to discovering the conclusions
and reasoning of IRS agents, but rather to guidance documents that it thinks may shed light on
the validity of the testing regime employed.  For purposes of discovery, pursuant to Rule
26(b)(1) of the Rules of the Court of Federal Claims (RCFC), '[r]elevant information need not be
admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of
admissible information."  Given this latitude, the Court is not persuaded by Defendant's
objection on the basis of relevance.

The Court further finds that Plaintiff's revision of Request Number 32 somewhat narrows
the boundaries of its request and that Defendant can respond in a reasonable manner.  As the
Court reads the revised request, it basically covers IRS documents that instruct, advise, or
otherwise tell an IRS employee to do or not to do something relating to ODC testing in
commercial products or to the application of the ODC excise tax regulations.  Plaintiff's motion
to compel is GRANTED with respect to revised Request for Documents Number 32.

Document Request Number 34

Defendant's objections to Request Number 34 are similar to its objections to Request
Number 32.

The Request states:

Produce all documents related to IRS use of testing for ODCs as a
basis to determine or consider whether excise taxes should be
imposed under 26 U.S.C. §§ 4681 *et seq.* on any taxpayer other
than Panasonic.  Please produce redacted documents as necessary
to preserve any taxpayer confidentiality obligations while fulfilling
your obligation to answer this request.

Defendant argues that Panasonic's request "seeks discovery of documents considered or
relied on by the IRS to 'determine' or 'consider' whether to impose excise taxes on other

taxpayers," but that, because this is a *de novo* tax refund suit, "the IRS's reasons for imposing taxes on other taxpayers are not relevant." Resp. at 7. In reply, however, Plaintiff explains that it is not attempting "to argue that the IRS should be stopped from assessing taxes against Panasonic based on the treatment of a third-party taxpayer." Reply at 8. Rather, it is exploring whether there were any "flaws or errors" in ODC testing that bear on the validity of the testing methodology. Again, because the focus of the mini-trial is on the validity of the scientific testing, the Court finds Plaintiff's discovery inquiry relevant or reasonably calculated to the lead to the discovery of relevant evidence.

Defendant also objects that the discovery request is overly broad because the phrase "related to" fails to modify a "sufficiently specific type of information, document, or event," quoting *Brown Bear*, 266 F.R.D. at 320. The Court finds, however, that the phrase "related to IRS use of testing for ODCs" is indeed modified, and thus narrowed sufficiently, by the remainder of the sentence. The universe of such documents is specifically those that were employed in the calculus of imposing ODC excise taxes, or not, on other taxpayers. Plaintiff's motion to compel is therefore GRANTED as to Document Request Number 34.

Attorney-Client Privilege

A number of documents responsive to Plaintiff's discovery requests have been redacted or withheld by the United States on the basis of the attorney-client privilege. Plaintiff argues that the privilege, however, does not extend to communications to which Dr. Bob Wright of PNNL was a party or which were shared with Dr. Wright.

In its motion, Plaintiff first notes the general rule that a client expressly waives the attorney-client privilege with respect to a confidential communication when it discloses the communication to a third party. *Eden Isle Marina, Inc. v. United States*, 89 Fed. Cl. 480, 501 (2009). Acknowledging that the privilege may extend to third-party agents in certain circumstances, Plaintiff emphasizes that "the third party's involvement must be necessary to the lawyer's provision of legal services." *Louisiana Municipal Police Employees Retirement Sys. v. Sealed Air Corp.*, 253 F.R.D. 300, 312 (D.N.J. 2008) (citing *Cavallaro v. United States*, 284 F.3d 236, 247-49 (1st Cir. 2002). The role of the agent must be to "facilitate communications" between the client and its attorneys. *United States v. ChevronTexaco Corp.*, 241 F. Supp.2d 1065, 1072 (N.D. Cal. 2002). In this respect, the third party is acting as an agent of counsel in much the same way as the attorney's clerks, investigators, or translators. *Louisiana Municipal Police*, 253 F.R.D. at 311; *see also United States v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961). But the party asserting the third party as such an agent bears the burden of showing this relationship to defeat a claim of waiver of the privilege. *Louisiana Municipal Police*, 253 F.R.D. at 311; *see also Energy Capital Corp. v. United States*, 45 Fed. Cl. 481, 491 (2000). Plaintiff argues that the Government's entries on its Privilege and Redaction Logs give "no indication that Dr. Wright's work was done at the direction of an attorney or to assist in providing legal advice." Mot. at 10. The entries also fail to demonstrate "that Dr. Wright's participation was necessary to facilitate IRS counsel's provision of legal advice to the seven-member IRS team." *Id*. at 11.

In response, the Government argues that the privilege extends to the communications involving Dr. Wright on two bases, first as an agent of counsel and second as a representative of

the client.  First, it maintains that "Dr. Wright's expertise was also needed for IRS Chief Counsel to understand and appropriately advise the IRS with respect to the legal significance of the test results obtained by Panasonic in its effort to rebut PNNL's findings" and "that IRS counsel could not have adequately advised the IRS during the audit without engaging in communications – intended to be confidential – that involved Dr. Wright."  Resp. at 15.  Defendant's argument in this regard amounts to claiming Dr. Wright as an agent of counsel in order to facilitate counsel's communications with the IRS on the scientific aspects of the matters in dispute.

In addition, the Government asserts that Dr. Wright was "a representative of the Internal Revenue Service for purposes of applying the privilege to the documents at issue because he possessed a 'special relationship' to both (1) the IRS and (2) its audit of Panasonic, which occasioned the need for legal services from IRS Chief Counsel."  *Id*. at 12.  Citing this Court's decision in *Energy Capital*, 45 Fed. Cl. at 489-91, Defendant argues, "As pertinent to this case, however, the attorney-client privilege will also apply to communications involving third-party independent contractors who are 'representatives of the client' for purposes of applying the privilege."  Resp. at 10.  In *Energy Capital*, this Court affirmed the rule that the privilege extends to third party independent contractors for the client, in the particular circumstances where they also possess "a *special relationship* to *both* the corporation and the transaction giving rise to the need for legal services."  45 Fed. Cl. at 489, 490 (quoting John E. Sexton, *A Post*-Upjohn *Consideration of the Corporate Attorney-Client Privilege*, 57 N.Y.U.L.Rev. 443, 500 (1982)) (emphasis added in *Energy Capital*).  *Energy Capital* relied on and endorsed the reasoning of the 7th Circuit in *In Re Bieter Co.*, 16 F.3d 929 (1994), which explained in an analogous context, "There is no reason to differentiate between an accountant-employee and a regularly retained outside accountant when both occupy the same extremely sensitive and continuing position as financial adviser, reviewer, and agent: both possess information of equal importance to the lawyer."  16 F.3d 929, 937 (7th Cir. 1994).

Defendant thoroughly recites Dr. Wright's relationship with the IRS via an interagency agreement executed in 1998 between the Department of Energy and the IRS in which PNNL, with Dr. Wright as the project manager, was retained to develop an analytical procedure for the detection of ozone-depleting chemicals in commercial products.  Resp. at 13.  PNNL was also retained to assist in the IRS's audits of taxpayers for ODCs through laboratory testing.  "Thus, since 1998, Dr. Wright has had a continuing relationship with the IRS, under the interagency agreement, to provide research and technical assistance to the IRS in its efforts to administer the excise tax provisions of the Internal Revenue Code."  *Id*. at 13-14.  In addition, Dr. Wright has been prominently involved in the IRS's audit of Panasonic.  "In order to properly advise the IRS with respect to the legal position it should adopt in the audit, IRS counsel necessarily relied on Dr. Wright's unique technical expertise and knowledge about PNNL's laboratory findings that had detected ozone-depleting chemicals on Panasonic's telephones and that supported the IRS's tax assessments in this case."  *Id*. at 15.  The Court is satisfied that Defendant has adequately demonstrated that Dr. Wright, albeit an independent contractor, meets the test for being treated as the "client's agent."

Nevertheless, Plaintiff argues that the Court "need not decide whether he is the functional equivalent [of an employee], because the United States has waived the privilege by sharing privileged information with its testifying agent."  Reply at 10.  Panasonic argues that "a

privileged communication is preserved only if it is made in confidence." *Id*. at 11.  In this instance, although Dr. Wright may have met the test for treatment as if he were an employee of the IRS, the confidentiality requirement of the attorney-client privilege has been abrogated because "the United States has clearly stated its intention to name Dr. Wright as its expert witness in this case." *Id*.  Plaintiff notes that information shared with expert witnesses is discoverable.  *Energy Capital*, 45 Fed. Cl. at 494.  It argues that, "[i]f a party discloses otherwise privileged information to an expert witness, therefore, the party knows the communication is not being made in confidence and intentionally waives the privilege that may otherwise attach to the communication."  Reply at 11 (citing *Coastline Terminals of Conn., Inc. v. United States Stell Corp.*, 221 F.R.D. 14, 16 (D. Conn. 2003) ("Experts hired to testify are not considered representatives of the lawyer for purpose of the privilege because their communications are subject to disclosure at trial and, therefore, are not confidential communications.").

     In support, Plaintiff emphasizes that the United States has already indicated its intent to name Dr. Wright as its expert witness.  Def.'s Mot. to Quash, Nov. 24, 2010 (Doc. No. 26), stating Defendant "will proffer the testimony of Dr. Bob Wright to testify as an expert at the mini-trial regarding the testing of Plaintiff's telephone products by PNNL."  In addition, during the administrative proceedings in the dispute between Panasonic and the IRS, the IRS advised that "the laboratory is the Service's Expert Witness" in support of its testing methodology.  Reply, Exh. 13 at ADMIN01553.  Accordingly, "because the IRS knew that Dr. Wright was its expert from the time it began testing phones, at the latest, any communications made with Dr. Wright were not made in confidence."  *Id*. at 12.  Plaintiff argues that it is only a technicality that Defendant has not yet formally designated Dr. Wright as its testifying expert.  Thus, Plaintaiff asserts, neither the attorney-client privilege nor the work product doctrine[1] attach to IRS communications with Dr. Wright because they were not made in confidence.

     The Court agrees with Defendant that "Dr. Wright was not a 'testifying expert,' within the meaning of RCFC 26(a)(2), during the administrative proceedings of this case, and he did not participate in any of the privileged communications in such a capacity."  Def.'s Sur-Reply at 4.  In *Energy Capital*, this Court found that "the policy arguments favor the production of all materials given to experts.  Complete disclosure promotes the discovery of the true source of the expert's opinions and the detection of any influence by the attorney in forming the opinion of the expert."  45 Fed. Cl. at 494.  The Court also noted that "a clear line is easier to administer and a predictable result helps the litigants plan their strategy."  *Id*.

     The Rules of the Court of Federal Claims provide just such a clear line for determining when an expert has been identified for purposes of trial testimony.  For example, RCFC 26(a)(2) refers to the disclosure of the identify of expert witnesses a party may use at trial, the production of expert reports upon such disclosure, and the timetable to disclose expert testimony; RCFC 26(a)(4) refers to the deposition of experts who have been identified for trial testimony.  RCFC 26, however, does not speak of the discovery of anticipated, suggested, or potential expert

---

[1]  In its Reply, Panasonic expands its motion to compel to cover all documents shared with Dr. Wright as to which the United States has claimed the protection of the work-product doctrine as well.

witnesses.[2]  For purposes of this litigation, Dr. Wright is not, at least not yet (despite the
indications of Defendant in the debate over the earlier motion to quash), an identified expert.  It
is thus not logical that the IRS knowingly waived the confidentiality of communications with Dr.
Wright before it formally identified him as a testifying expert.  If and when he is formally
identified, the question of what expert discovery Plaintiff may undertake of the IRS regarding
Dr. Wright may be pertinent (and attorney-client privilege and work product doctrine issues be
renewed).  Even Defendant has noted, "the documents at issue will become discoverable only to
the extent the privilege or protection may hereafter be waived by Dr. Wright's designation as a
testifying expert for the United States."  Def.'s Sur-Reply at 10.  For now, the Court does not
find that his status as a prospective trial expert witness overrides the reach of the attorney-client
privilege to the communications between him and the IRS in his capacity as a representative of
the agency.  Plaintiff's motion to compel in this respect is therefore DENIED.

<u>Deliberative Process Privilege – Document Request Number 52</u>

    Plaintiff seeks to compel the production of 19 documents relating to the "proposal,
drafting, and promulgation of 26 C.F.R. § 52.4682-3," as to which the United States has asserted
the deliberative process privilege.  This section "provides rules relating to the tax imposed on
imported taxable products under section 4681, including rules for identifying imported taxable
products, determining the weight of the ozone-depleting chemicals (ODCs) used as materials in
the manufacture of such products, and computing the amount of tax on such products."  26
C.F.R. § 52.4682-3(a)(1).  The deliberative process privilege generally protects documents
reflecting the internal opinions and deliberations that are part of the process in which government
officials make decisions and formulate policies.  *Dep't of Interior and Bureau of Indian Affairs
v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001).  The information subject to the
protection of the privilege must be both pre-decisional and deliberative in nature.  *Dairyland
Power Co-Op v. United States*, 77 Fed. Cl. 330, 337 (2007).

    Plaintiff argues that the United States "has put at issue the meaning of the regulation by
asserting an interpretation of the regulation contrary to it's [sic] plain language."  Mot. at 12.
More specifically, it avers that the regulation imposes the ODC excise tax "only for the use of
ODCs in the manufacturing or production of *electronic components*."  *Id*.  In its answer to
Plaintiff's Interrogatory Number 4, however, the United States stated, "The tax applies if any
ozone-depleting chemical was used as material in the manufacture or production of plaintiff's
telephone products (26 U.S.C. § 4682(c)), regardless [of] how or when in that process it was
used."

    Panasonic notes that factual findings and conclusions are not protected by the privilege if
they can be segregated from information inherent to opinion or policy deliberations.  It suggests
that the documents at least be submitted to the Court for *in camera* inspection to determine

---

[2]  The Court is not persuaded by Plaintiff's citation to *Coastline Terminals*, 221 F.R.D. at 16, in
which the district court in Connecticut noted the plaintiff's "intention" to name an entity, Triton
Environmental ("Triton"), as its expert witness.  This Court prefers the more objective test of
actual expert identification and, in any event, Triton's prospective status as an expert witness was
not the foremost reason for the failure of Triton's assertion of the attorney-client privilege.

whether they qualify for the privilege in the first place.  Even so, the privilege may be overcome pursuant to a five-factor test that courts employ to determine whether the plaintiff's evidentiary need for the information is sufficient to out-weigh the Government's interest in confidentiality. *Dairyland*, 77 Fed. Cl. at 338.

The first of the factors is the relevance of the evidence sought to be protected.  Defendant argues that the documents are irrelevant to Plaintiff's "attempt to distinguish between electronic and non-electronic components" because "only the populated electronic circuit boards of its telephones were tested by PNNL."  Resp. at 25.  In addition, the Government argues that "unpublished, pre-decisional, and deliberative memoranda – such as those withheld here – are not relevant to the proper legal interpretation of a regulation."  *Id*.  Defendant is persuasive in this argument.  *See, e.g., Alpha v. United States*, 83 Fed. Cl. 279, 287 (2008) (agreeing that "the proper construction of [a regulation] is an issue of law for the Court to decide based upon its analysis and application of the governing legal authorities . . .").

Plaintiff suggests that the documents may reflect relevant "factual" information such as whether the IRS "had before it only concerns with respect to the use of ODCs in the manufacture of *electronic* components," or "how the ODC weights were calculated for Table II" (e.g., "if the IRS calculated the ODC weight using only amounts used in the manufacture of electronic products in the phone, that further indicates, consistent with the clear terms of the regulation, that it is only the use of ODCs in the manufacture of electronic components that is a taxable event").  Reply at 19.

Defendant does not object to the submission of the documents for *in camera* review in order for the Court to determine whether factual information may be segregated without impinging on its deliberative process privilege.  Otherwise, it argues that the irrelevancy of the documents, coupled with the obvious deleterious effect on the prospect for frank and candid discussion by government employees, weighs strongly in favor of protecting the privilege here.

The Court concurs.  The Court also questions the relevance of the documents given the focused topic of the mini-trial.  In its order of September 8, 2010, the Court set a schedule for fact and expert discovery in preparation of a mini-trial "on the issue of the validity of the testing *employed* for the presence of ozone-depleting chemicals (ODCs) in the products and components in question." (emphasis added).  The Court accepts at face value the representation of the United States that "only the populated electronic circuit boards" of Panasonic's telephones were tested. The scientific validity of the testing of the "populated electronic circuit boards," therefore, is the inquiry before the Court in the mini-trial and the proper object of the parties' discovery efforts. The Court sees no overriding need for Plaintiff to delve into the pre-decisional, deliberative give-and-take of government employees to try to tease out facts that do not seem to be at issue; nor does the Court find it necessary to review the documents *in camera*.  Plaintiff's motion to compel the production of documents withheld per the deliberative process privilege is DENIED.

s/ Edward J. Damich
EDWARD J. DAMICH
Judge