# In the United States Court of Federal Claims

No. 09-793 T
(Filed: January 14, 2013)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |
|---|---|
| **PANASONIC COMMUNICATIONS CORPORATION OF AMERICA,** | \* \* \* \* |
| Plaintiff, | \* \* |
| v. | \* \* |
| **THE UNITED STATES,** | \* \* |
| Defendant. | \* \* |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## ORDER

On December 18, 2012, Defendant filed two motions relating to expert discovery. In the first motion, Defendant seeks leave to file a "supplementary rebuttal" report of testing it would like to conduct "to address the opinions of plaintiff's proposed expert that are based on his belated testing" as reported in Plaintiff's rebuttal report filed on December 3, 2012. In the alternative, Defendant requests that "all opinions by plaintiff's proposed expert that are based on his new and belated testing be excluded from trial, as their admission without the opportunity for rebuttal would unfairly prejudice the United States." Def.'s Mot. 1-2.

In addition, Defendant seeks an extension of the deadline for completion of expert discovery from January 25, 2013, to March 29, 2013. Defendant advises that it needs the additional discovery period to be able adequately to review Plaintiff's expert's rebuttal report – which, inclusive of Tables and Appendix, totals 381 pages and 410 footnotes – and prepare for an effective deposition.

This case is slowly careening toward a mini-trial on the validity of the testing employed for the presence of ozone-depleting chemicals ("ODCs") in Plaintiff's telephone products and components as to which the Government assessed federal ODC excise taxes. In February 2012, the parties jointly proposed a discovery plan and schedule, which the court adopted, providing for the close of fact discovery on May 14, a deadline of July 16 for the disclosure of experts and expert reports, and for the allowance of rebuttal experts and rebuttal reports, by a deadline of October 1, 2012. The deadline for the disclosure of experts and expert reports was later informally extended to August 1, 2012. On that date, Plaintiff provided an expert report by Dr.

Neil Ram; similarly, Defendant identified and produced the reports of two experts, Dr. Bob Wright and Dr. Laurence Strattan.  Subsequently, per unopposed motion by Defendant, the court extended the deadline for the disclosure of rebuttal reports to December 3, 2012, and the deadline for completion of expert discovery to January 25, 2013.

Defendant's Motion for Leave to File a Supplemental Rebuttal

Expert discovery is governed by Rule 26 of the Rules of the Court of Federal Claims ("RCFC").  RCFC 26 requires that an expert's report include a "complete statement of all opinions the witness will express and the basis and reasons for them."  RCFC 26(a)(2)(B)(i). The Rule also allows the filing of a rebuttal expert report "intended solely to contradict or rebut evidence on the same subject matter identified by another party by another" expert.  *See D'Andrea Brothers LLC v. United States*, 2012 SL 644010, at *3 (Fed. Cl. 2012).

Defendant argues that Dr. Ram's rebuttal reports includes testimony based on testing, performed after the exchange of initial expert reports, that it characterizes as "new evidence" exceeding the proper scope of rebuttal.  "The United States will be unfairly prejudiced if Dr. Ram's opinions are admitted based upon this new evidence without providing the United States with an effective opportunity for rebuttal, which would include limited testing conducted by its own experts to rebut or contradict Dr. Ram's opinions."  Def.'s Mot. 3.

Plaintiff advises, however, that it directed testing in response to six photomicrographs that Defendant's expert, Dr. Wright, submitted in his expert report of August 1, 2012, in support of his "theoretical model based on adsorption and absorption principles related to the uptake and release of chemical species from a porous sorbent-type material."  *See* Dr. Wright Expert Report, § III.2, "Design and theory of EFL-130A," as excerpted in Exh. B of Dr. Ram Decl., Pl.'s Response.  The "material" in question apparently refers to printed circuit boards ("PCB"s). "Photomicrographs of example PCBs from the Panasonic telephones are shown in Figures III.1 through III.6.  These photographs show the porous characteristics of the PCBs that would allow them to absorb, retain, and slowly release volatile chemicals."  *Id*.

As the Government explains in its motion, the method employed by Dr. Wright at his facility, Pacific Northwest National Laboratory ("PNNL"),

> recognizes that a printed circuit board exposed to ODCs during manufacture (e.g., to clean the printed circuit board) will absorb a portion of the ODCs into its matrix, which ODCs can then later be detected as they are released from the circuit board with the application of heat.  In very general terms, this is the theoretical model of PNNL's methodology.

Def.'s Mot. 4.

Plaintiff avers that, in rebuttal of Dr. Wright's methodology and conclusions, Dr. Ram directed optical microscopic testing to be performed on certain Panasonic PCBs by Sturbridge

Metallurgical Services ("SMS") relating to the porosity of the PCBs and the potential for penetration of ODCs therein. Based on the SMS testing, Dr. Ram concluded that "the Panasonic PCBs are not conducive to adsorption or absorption of ODCs because their physical properties do not provide sufficient pathways, adsorption forces or surface-to-area ratios needed for adsorption or absorption." *See* Ram Rebuttal, as excerpted in Exh. 1, Def.'s Mot.

Defendant is accurate in pointing out that the porosity and absorptive qualities of printed circuit boards were issues put in play in this litigation long before the exchange of the parties' expert reports. But it is a stretch to gainsay that the testing that Dr. Ram subcontracted out to SMS for his December 3, 2012, rebuttal report was performed for the purpose of contesting the microphotographs – and the conclusions drawn at least partially therefrom – referenced in Dr. Wright's expert report of the previous August. Plaintiff's rebuttal evidence is, therefore, not "new" evidence comparable to the new theory of damages proffered in a rebuttal report precluded by the Court of Federal Claims in *D'Andrea Brothers*. Nor is the SMS testing inadmissible as merely the correction of an oversight in plaintiff's case in chief, as argued by Defendant (citing *Crowley v. Chait*, 322 F.Supp.2d 530, 551 (D. N.J. 2004)). It is clearly established, further, that rebuttal reports can utilize "additional data not found in the expert report" if it relates to the same subject matter and "unmistakably serves to rebut [the opposing party]'s expert." *Deseret Management Corp. v. United States*, 97 Fed. Cl. 272, 274 (2011).

Defendant would have the court limit the scope of a rebuttal report's "additional data" only to that already in existence "at the time initial expert reports were exchanged," Def.'s Reply 2, citing *Crowley* and *Kirola v. City and County of S.F.*, 2010 WL 373817, at *2 (N.D. Cal. 2010), on which the Court of Federal Claims relied in *Deseret*. By contrast, here Plaintiff's rebuttal report cites results from testing performed subsequent to the initial expert reports. While the 20-year-old transcript in *Crowley* and the park sites in *Kirola* permitted as rebuttal evidence in those cases happen to meet the "data-previously-in-existence" test that Defendant presses on this court, such a limitation is nowhere articulated in any of those cases. The truest test for the admission of evidence in an expert rebuttal report is whether the evidence is specifically offered to rebut a conclusion, opinion, or datum put forth by the other side's expert.

Indeed, "[r]ebuttal evidence is properly admissible when it will 'explain, repel, counteract, or disprove the evidence of the adverse party.'" *Id*. (quoting *Crowley*, 322 F.Supp.2d at 551). In *Crowley*, a party sought to exclude actuarial literature in a rebuttal report that the opposing party's expert had available to her at the time of her initial expert report. The court refused to countenance a rule that would automatically exclude anything an expert could conceivably have included in his or her original report. The court explained,

> Such a rule would leave to the inclusion of vast amounts of arguably irrelevant material in an expert's report on the off chance that failing to include any information in anticipation of a particular criticism would forever bar the expert from later introducing the relevant material.

*Id*.

Rather, the district court emphasized, "All that is required is for the information to repel other expert testimony." *Id*. The SMS testing that Dr. Ram offers in his rebuttal report clearly satisfies the "explain, repel, counteract, or disprove" criteria, even if the underlying issue of the circuit board's porosity and adsorptive/absorptive qualities were previously recognized by Plaintiff as "fundamental" in this essentially scientific dispute.

Per the court's schedule for expert discovery, each party had the opportunity to engage and identify its experts and submit their reports. Each party subsequently had the opportunity to follow up with expert rebuttals to the other side's reports. Now Defendant proposes either that Plaintiff's rebuttal be precluded or that Defendant be allowed to submit a rebuttal to its opponent's rebuttal. Dr. Wright seeks "limited testing necessary to rebut Dr. Ram's erroneous claims," including "[s]canning electron microscopy (SEM)" of relevant circuit board materials, "gravimetric exposure tests" to measure rate of absorption of ODC solvents, "thermal gravimetric analysis (TGA)" to profile the release of solvents, and "BET surface area measurements which provide an indicator of porosity and physical adsorption behavior." Wright Decl., Exh. 4, Def.'s Mot.

If such tests were specifically in rebuttal to Dr. Ram's initial expert report, they too would be, or would have been, appropriately part of Defendant's experts' rebuttal reports. But if this court were to grant Defendant the opportunity to rebut its opponent's rebuttal, it would be similarly obliged were Plaintiff in turn to seek to rebut Defendant's sur-rebuttal, and so on and so on. For the same reason that courts do not allow endless supplemental expert reports (*see Beller ex rel. Beller v. United States*, 221 F.R.D. 689, 701 (D.N.M. 2003) (refusing to "create a system where preliminary reports could be followed by supplementary reports and there would be no finality to expert reports, as each side, in order to buttress its case or position, could 'supplement' existing reports and modify opinions previously given"), there must be a practical end to expert discovery. Defendant will have the opportunity to challenge Plaintiff's expert, and the SMS methodology and conclusions, in deposition and in cross-examination at trial.

Accordingly, Defendant's motion for leave to submit a supplemental report or in the alternative to exclude the SMS-based testimony in Plaintiff's rebuttal report is denied.

Defendant's Motion for Enlargement of the Expert Discovery Period

Apart from the above motion, Defendant has also moved for an extension of time, from January 25, 2013, to March 29, 2013, of the deadline for the close of expert discovery. In response, Plaintiff requests either that the motion be denied or that the extension be granted only to February 22, 2013.

Plaintiff explains that the extensiveness of Dr. Ram's rebuttal report was due to several factors, all of which sound reasonable, such as the need to respond to Defendant's two experts, Dr. Ram's extensive citation to the record and to source materials (which should facilitate, rather than complicate, verification of statements and conclusions), and Defendant's post-August 1, 2012, disclosure to Plaintiff of extensive documents. While the Court is sensitive, however, to

Plaintiff's concern that it have its day in court as soon as possible, the Court finds that an extension of time to March 29, 2013, is reasonable under the circumstances.

The deadline for the close of expert discovery is hereby extended to March 29, 2013.

                                               s/ Edward J. Damich
                                             EDWARD J. DAMICH
                                             Judge